UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ROBERT C. HINTON, JR.

VS. CA NO: 07- 321ML

THE GROUP SHORT TERM DISABILITY AND LONG TERM DISABILITY PLAN FOR EMPLOYEES OF INVACARE CORPORATION; INVACARE CORPORATION In Its Capacity as Plan Administrator; and HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; Alias

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS OBJECTION TO DEFENDANTS' MOTION TO AMEND ITS ANSWER TO ALLOW A COUNTERCLAIM**

## I. BACKGROUND

On February 28, 2005, Plaintiff sustained substantial injuries primarily consisting of compression of his thoracic spinal area, and a right shoulder injury resulting in athroscopic surgery for repair of a labral tear. The surgery was not successful, and he sustained a restriction of movement in the right shoulder with severe pain. He was later diagnosed as having developed reflex sympathetic dystrophy, with a ten (10%) percent whole person impairment. At least two physicians declared him unable to work.

Based on his extensive injuries, Plaintiff began receiving long term disability benefits commencing May 30, 2005. Defendant's policy provides for payments to Plaintiff of $1,750.00 per month, subject to setoff from first party providers including social security. In any event, the minimum monthly payment due to Plaintiff would be $100.00.

In August 2005 Plaintiff, pursuant to the terms of his policy applied for social security disability benefits. On June 8, 2006 Defendant Hartford terminated further benefits effective June 1, 2006. Plaintiff timely appealed the denial, and Hartford's final decision denying long term benefits to Plaintiff was filed on September 18, 2006.

In May 2007 social security disability benefits were granted to Plaintiff providing retroactive compensation effective August 2005. On August 23, 2007 Plaintiff filed the within complaint claiming a wrongful termination of disability benefits under ERISA.

Plaintiff received $19, 884.00 retroactive disability compensation and thereafter the monthly amount of $1242.00. His minor children also received compensation based on their status as Plaintiff's dependents. In response to Defendant's recent requests, in March 2008, Plaintiff provided information to Defendant concerning the social security compensation that Plaintiff received.

Defendant now seeks to amend its answer to assert a counterclaim to pursue a claim for damages against Plaintiff for payment of past due social security benefits. Any such claim is prevented by 29 U.S.C. §1132(a)(3) which only allows a Plan or its fiduciary to pursue equitable relief, and therefore, asserting a counterclaim for legal damages would be futile.

## II. ARGUMENT

### A. Defendants' Motion to Amend is Futile and Should Therefore Be Denied.

Fed. R. Civ. P 15(a) provides that "leave to amend should be freely given when justice so requires." Notwithstanding the same, "a court should deny such leave where pursuing the claim would be futile." *Adorno v. Crowley Towing & Transp. Co*., 443 F.3d 122, 126 (1st. Cir. 2006). To determine whether the filing of a proposed counterclaim would be futile, the court should review the proposed amendment using the same standard it would apply as if it were a Rule 12(b)(6) motion to dismiss. *Id*.

**B. The terms of 29 U.S.C. §1132(a)(3) Allow a Plan or Its Fiduciary to Seek Equitable Relief Only**

The relevant provision of ERISA, 29 U.S.C. §1132(a)(3) provides that a fiduciary may "obtain other appropriate equitable relief …(ii) to enforce any provisions of this subchapter or the terms of the plan.…" The Court has narrowly construed this provision to prevent a Fiduciary from seeking a legal claim for damages against a beneficiary.

In *Great West Life & Annuity Co. v. Knudson*, 534 US 204 (2002) Great West, the long term disability insurance carrier, sought to impose personal liability on its beneficiary to recover payments the beneficiary received from a third party tortfeasor. The Court held that the terms of 29 U.S.C. §1132 (a)(3) only authorized equitable relief and would not allow an action at law to recover money from its beneficiaries. An exception was noted when the property sought could be clearly traced to a particular funds in [the beneficiary's] possession. *Knudson* 534 US at 213.

The *Knudson* case was further qualified by the Court in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 US 356 (2006). In *Sereboff* , the Court allowed recovery of third party proceeds to the beneficiary when there was a specific identifiable fund in the [beneficiary's]

possession. *Sereboff,* 547 US at 362-63. The *Sereboff* Court reasoned that the Mid Atlantic's claim for damages was distinguished from the situation in *Knudson* because Mid-Atlantic sought "specifically identifiable funds within the possession and control of the Sereboffs," rather than seeking to impose personal liability for a contractual obligation to pay money. *Id*.

The First Circuit has not yet addressed the particular issue whether recovery of social security benefits by the Fiduciary against the Beneficiary should be allowed post-*Sereboff*. Pre-*Sereboff*, the First Circuit established a two step process to determine if the relief sought would be allowed. First, the Court would ask whether the proposed relief was equitable. Second, the Court would inquire whether the relief sought was appropriate. *LaRocca v. Borden*, 276 F.3d 22, 27 (1st Cir. 2002).

In the case at bar, the specific terms of the Invacare Long Term Disability Plan do not allow the claim to be pursued. Consistent with *Sereboff*, the first prong of *LaRocca* is not satisfied by the terms of the policy. Pertinent provisions of the Plan provide[1] :

**What happens if benefits are overpaid?**

An overpayment occurs when it is determined that the total amount we have paid in benefits is more than the amount that was due to you under the plan. This includes, but is not limited to, overpayments resulting from:

1. retroactive award of Other Income Benefits;
2. failure to report, or late notification to us of Other Income Benefits or earned income;
3. misstatement; or
4. an error we may make.

[1] Quoted text is from Summary Plan Description at p. 44

> We have the right to recover from you any amount that is an overpayment of benefits under this plan. You must refund to us the overpaid amount. We may also, without forfeiting our right to collect an overpayment through any means legally available to us, recover all or any portion of an overpayment by reducing or withholding future benefit payments, including the Minimum Monthly Benefit.

As noted by the Court in *Curran v. Camden National Corp*. 477 F.Supp.2d 247 (D.ME 2007 *Sereboff* requires that a Fiduciary's pursuit of funds must be from " a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law." *Id.* at 256 *citing Sereboff.* The Invacare Plan in issue in the case at bar does not provide for recovery from a specific identifiable fund. Rather, it seeks to impose liability over the personal assets of Mr. Hinton generally. This is borne out by the language of the Plan which provides: "We have the right to recover *from you* any amount that is an overpayment of benefits under this plan."

The *Curran* Court cites with approval to *Popowski v. Parrott,* 461 F.3d 1367 (11th Cir. 2006) as a case that highlights the distinctions established by *Sereboff*. In *Popowski* there were two similar claims involving instances when the Fiduciary sought repayment from its beneficiary after each had received benefits from third party payers.

In the first *Popowski* claim, the beneficiary was paid by its Plan $152,889.65 in medical expenses. The beneficiary later settled a claim against a tortfeasor for $525,000.00. The ERISA regulated employee health benefit plan, provided that "the Covered Person ... must repay to the Plan the benefits paid on his or her behalf out of the recovery made from the third party or insurer." *Popowski* at 1370. The Plan sued the Beneficiary to obtain reimbursement. The district court dismissed the action, because the Plan was seeking legal, not equitable relief.

In the second *Popowski* claim, the beneficiaries were also involved in an accident and the Plan also paid benefits to its beneficiaries. The beneficiaries settled with the tortfeasor's insurer and the Plan demanded reimbursement pursuant to tit Plan language that provided payment "in full, and in first priority, for any medical expenses paid by the Plan relating to the injury...." *Id.* at 1371. This claim was also dismissed by the District Court because the Plan was seeking legal, not equitable relief

The Eleventh Circuit reversed the first decision, but affirmed the second. The Eleventh Circuit, applying *Sereboff* held that, in the first claim, "the plan language ... specifies both the fund (recovery from the third party or insurer) out of which reimbursement is due to the plan and the portion due the plan (benefits paid by the plan on behalf of the defendant)." *Id.* at 1373. No personal liability would be imposed on the Beneficiary by allowing this form of relief.

On the other hand, there was no equitable lien in the second claim since the reimbursement language specified that it "claims a right to reimbursement 'in full, and in first priority, for any medical expenses paid by the Plan relating to the injury or illness," without specifying that that reimbursement was to be made out of a particular fund, as distinct from the beneficiary's general assets." *Id.* at 1374.

This reasoning, adopted by the District Court in Maine is entirely consistent with the rules set forth in *Sereboff*. Applying those rules to the case at bar, the Plan language thus prevents Hartford from pursuing its claim against the plaintiff. The Plan language speaks in terms of pursuing a personal remedy against the Plaintiff's general assets, rather than limiting

itself to recovery strictly from the social security proceeds. Though the Plan language speaks to recovery of overpaid amounts, it does not limit itself to recovery from that fund. The Plan thus sets forth an action for a legal remedy, and not for equitable relief. Under *Knudson*, *Sereboff* and its progeny, the claim cannot be allowed.

## III. CONCLUSION

Defendant's Motion to Amend its Answer so as to assert a counterclaim for recovery of overpayments should be denied. Assertion of the Counterclaim is futile since it seeks a legal remedy when only equitable relief is allowed pursuant to 29 USC §1132(a)(3), *Knudson*, *Sereboff* and its progeny.

PLAINTIFF
By his attorneys,
Law Office of Mark B. Morse

/s/ Mark B. Morse

MARK B. MORSE
RI Bar Reg No 3003
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555
fax (401) 273-0937
email: mark@morselawoffice.com

**CERTIFICATION**

To: Mark A. Pogue, Esq.
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903

I hereby certify that a true copy of the within was transmitted through the ECF system of the United States District Court, D.R.I. to the abovenamed.

DATE: May 27, 2008 /s/ Mark B. Morse